691 F.Supp. 1419 (1988)
PLANNED PARENTHOOD ASSOCIATION OF the ATLANTA AREA, INC., Planned Parenthood of East Central Georgia, Inc. and Orrin Moore, M.D., individually and on behalf of their minor patients and all other similarly situated persons, Plaintiff,
v.
Joe Frank HARRIS, Governor, individually and in his official capacity, Defendant.
PLANNED PARENTHOOD ASSOCIATION OF the ATLANTA AREA, INC., and Planned Parenthood of East Central Georgia, Inc., Plaintiffs,
v.
Joe Frank HARRIS, Governor of the State of Georgia, Individually and in his Official Capacity, Defendant.
Civ. A. Nos. 1:88-CV-1159, 1:87-CV-1405-RHH.
United States District Court, N.D. Georgia, Atlanta Division.
July 11, 1988.
*1420 Margie Pitts Hames, Robert L. Goldstucker, Nall, Miller, Owens, Hocutt & Howard, Elizabeth Joan Appley, Atlanta, Ga., Dara Klassel, Beth Otten, Roger K. Evans, Planned Parenthood Federation of America, New York City, for Planned Parenthood Ass'n of the Atlanta Area.
Margie Pitts Hames, Robert L. Goldstucker, Atlanta, Ga., for Planned Parenthood of East Cent. Georgia.
Michael J. Bowers, H. Perry Michael, William C. Joy, Kathyn L. Allen, State Atty. General's Office, Atlanta, Ga., for Jose Frank Harris, Governor.

ORDER
ROBERT H. HALL, District Judge.
Plaintiffs in this civil rights action seek relief pursuant to 42 U.S.C. § 1983, on the grounds that the Georgia Parental Notification Act, as amended, and implementing *1421 rules unduly restrict their right to privacy, due process and equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

FACTS

A. Procedural History

Plaintiffs, providers of abortions and abortion-related services filed this class action, 1:87-CV-1405-RHH ("Planned Parenthood I"), seeking relief against the Georgia Parental Notification Act (the "original Act"), which requires unemancipated, unmarried minors to notify one parent of their intention to terminate their pregnancies or to bypass the parental notification requirement and petition the juvenile court for waiver of that requirement and its implementing rules. Ga. Off'l Code Ann. §§ 15-11-5 and XX-XX-XXX et seq. (1987).
On September 8, 1987, this court entered a preliminary injunction enjoining implementation of the original Act. Planned Parenthood Ass'n of Atlanta Area v. Harris, 670 F.Supp. 971 (N.D.Ga.1987) (Hall, J.). The court reasoned that "(1) the verification procedures of the Act are unconstitutionally burdensome and fail to provide adequate alternative means of verification; (2) the newly promulgated Juvenile Court rules requiring the inclusion on certain court documents of the minor's name and social security number fail to guarantee that minor constitutionally adequate anonymity in seeking judicial waiver by not requiring that the juvenile court record be sealed." 670 F.Supp. at 994.
The parties appealed that order to the Eleventh Circuit Court of Appeals. During the 1988 session of the Georgia General Assembly, the Georgia legislature passed Senate Bill 621 amending the Act which was signed by the Governor as Act 1229. The effective date of that amendment is July 1, 1988.
On May 27, 1988, plaintiffs providers of abortions and abortion-related services and a physician, filed this class action, 1:88-CV-1159-RHH ("Planned Parenthood II"), challenging the Georgia Parental Notification Act, Ga. Off'l Code Ann. §§ 15-11-5 and XX-XX-XXX et seq., as amended (the "amended Act") and implementing rules of court.
On June 16, 1988 the Eleventh Circuit remanded the original action to this court for further proceedings. Defendant has moved this court to consolidate the two cases. As the two present suits relate to the same statute and questions of law, the court GRANTS defendant's motion and consolidates them into one action. By so doing, the court also makes its previous orders entered in 1:87-CV-1405-RHH applicable to 1:88-CV-1159-RHH as well as the entire record of that case, and vice versa.[1]
Plaintiffs have now moved for a preliminary injunction enjoining implementation of the amended Act. A hearing was held June 29, 1988 at which time the parties had the opportunity to make legal arguments and introduce evidence supportive of their respective positions. The court, by order entered June 29, 1988, temporarily restrained the function of the amended Act pending this court's consideration and ruling on the motion for preliminary injunction. Plaintiffs' motion for preliminary injunction is currently before the court for decision.

B. Changes in the Act and Rules

1. Verification Procedures
The amendments to the Act change the verification procedures to repeal the requirement that an "accompanying adult" verify that parental notification has taken place and offer three other options as forms of verification: First, a minor may furnish a statement, signed by a parent, guardian, or person standing in loco parentis, stating that person has been notified that an abortion is to be performed on that minor. § 15-11-112 (a)(1)(A). Second, the physician or agent may give at least 24 hours' "actual notice, in person or by telephone" to such person. *1422 § 15-11-112(a)(1)(B).[2] Third, the physician or agent may give written notice by "regular mail" to that person. § 15-11-112(a)(1)(C).[3] In the case of mail and telephone notice, the amended Act imposes a 24-hour waiting period from the time of notice, or deemed notice, before the provider may perform the abortion.

2. Judicial Bypass

(a) Expedition

The original Act provided that a waiver hearing be held by the juvenile court within three days of the filing of the petition, excluding Saturdays, Sundays and holidays. The original Act mandated that the juvenile court render its decision within 24 hours of the conclusion of the hearing. The court in Planned Parenthood I specifically read this provision to mean that if the juvenile court failed to act within these time limits, the waiver petition be deemed denied and immediately appealable to the Georgia Court of Appeals. 670 F.Supp. at 990, 990 n. 24.
The amended Act specifies that if the hearing is not held within the three days prescribed or if the juvenile court fails to rule within the 24 hours mandated, the minor's petition shall be deemed granted. §§ 15-11-113; XX-XX-XXX(d).
The amended Act provides venue for judicial waiver in the juvenile court of any county in Georgia. § 15-11-114(d). The amended Act also provides that the juvenile court assist the minor in the preparation of the waiver petition and the notices required to be filed with the juvenile court. § 15-11-112(b).

(b) Anonymity

The amended Act provides for the sealing of the juvenile court records and adds a requirement that the name, address or social security number of the minor not be disclosed. § 15-11-114(b); 114(d); 114(e).
In response to the amended Act's request that the appellate courts of the State of Georgia issue such rules as are necessary to implement the statute, the Georgia Supreme Court adopted the recommendations of the Council of Juvenile Court Judges of Georgia and amended the Uniform Juvenile Court Rules relating to the anonymity of the minor seeking judicial waiver. Rule 23.6 now provides that the juvenile court's order be styled in the same manner as the petition and shall contain a physical description of the minor. Rule 23.6, Uniform Juvenile Court Rules. Rule 23.8 was added to provide that the court not disclose any information concerning a case arising under the Georgia Parental Notification Act or permit any access to the file except by the minor, the minor's next friend or her attorney. Rule 23.8, Uniform Juvenile Court Rules. Rule 23.9 was added to provide that in the event of an expedited appeal from the denial by a juvenile court of a minor's waiver petition, the juvenile court shall insure complete anonymity of the minor by using only her initials in the record transmitted to the appellate court and shall not disclose her name, address, birth date or social security number in the record. Rule 23.9, Uniform Juvenile Court Rules.
The court will disclose and discuss other relevant portions of the amended Act and Rules as necessary to the disposition of the current motion.

DISCUSSION
The court, in its order preliminarily enjoining the original Act, set forth the appropriate standards of constitutional review which the court will not repeat here. See Planned Parenthood Ass'n of Atlanta *1423 Area v. Harris, 670 F. Supp. at 982-985. Suffice it to say that the Supreme Court has held that a statute requiring parental involvement is constitutional where it does not "unduly burden" a minor's right to an abortion. Id. at 985. The question before this court now, as it was in that previous facial challenge to the Act, is whether the Georgia Parental Notification Act is narrowly tailored to promote the state's significant interest in promoting parental consultation prior to the abortion decision so as not to "unduly burden" that right. Specifically, this court must determine whether the amendments to the Act and Rules correct the constitutional defects identified by this court, create new difficulties, or possibly fail to address deficiencies not explicitly dealt with by this court in its previous order.[4]
The potential defects with the amended Act and Rules as challenged by plaintiffs in their briefs and as raised by plaintiffs and the court at the hearing include, among others: (1) the failure of the amended Act or Rules to provide tangible authorization to the provider that the juvenile court has failed to hold a timely hearing or timely issue its order in order that the abortion may proceed; (2) the requirement of the Uniform Juvenile Court Rules that for all petitions an "intake officer" be appointed to make a preliminary determination as to whether the waiver petition shall be filed; (3) the provision on the waiver petition form and in the Uniform Juvenile Court Rules for a guardian ad litem to be appointed; (4) the failure of the Uniform Juvenile Court Rules to provide that the record of the waiver proceedings be sealed from the time of the initiation of the proceedings; (5) the requirement on the waiver petition form that the minor provide her name, signature and date of birth; (6) the requirement of the Uniform Juvenile Court Rules that the waiver petition contain the minor's name, age and address; (7) the requirement in the Act that only "regular mail" be used to accomplish mail notice; and (8) the 24-hour waiting period applicable where the provider gives notice by mail, telephone, or in person.

A. Judicial Waiver Under the Amended Act and Rules

As noted in this court's order in Planned Parenthood I, courts have refined the strict scrutiny analysis used in evaluating the judicial bypass provisions of parental notification statutes to specify that: (1) The minor woman must have access to the alternative procedure without first consulting her parents; (2) If the court (or other neutral tribunal) finds the minor woman to be mature enough to consent to the abortion in consultation with her physician without parental involvement, it must waive the parental [notice] requirement and allow the minor to obtain an abortion on her own consent; (3) If the court finds the minor woman immature, it must nevertheless authorize the abortion without parental consent if the abortion would be in the minor woman's best interests; (4) The proceedings must be anonymous and sufficiently expedited to give the minor woman an effective opportunity to exercise her constitutional rights. Planned Parenthood Ass'n of Atlanta v. Harris, 670 F.Supp. at 984, 988 (citing Bellotti v. Baird, 443 U.S. 622, 643-47, 99 S.Ct. 3035, 3048-50, 61 L.Ed.2d 797).

1. "Constructive Order"
The amended Act, § 15-11-113 provides that if a hearing is not held within 3 days of the filing of the waiver petition, excluding Saturdays, Sundays and holidays, the petition shall be deemed granted. § 15-11-113. The amended Act also provides that "if the juvenile court fails to *1424 render its decision within 24 hours after the conclusion of the hearing, then the petition shall be deemed granted." § 15-11-114(d). Neither the amended Act nor the Rules make provision for written documentation confirming this "constructive order" or authorizing a physician to proceed with the abortion. Under the amended Act however, the provider is subject to criminal liability should the abortion be performed in violation of the statute. The provider under the current Act and Rules has nothing by way of official documentation transmitted from the court to rely on that the juvenile court has failed to act within the specified time. The provider would therefore have to rely on unofficial documents submitted by one other than the court or on the minor's word that she had attempted to obtain judicial waiver but that the juvenile court had failed to hear the case or rule within the statutorily mandated time period.
Where a provider is unwilling to rely on such informal evidence that the minor had complied with the statute, the minor would presumably be faced with the additional burden and delay of seeking mandamus from the Georgia Court of Appeals ordering the juvenile court to confirm that no action had been taken within the statutorily allowable time. Statutes that similarly have failed to provide this documentation have been struck down as constitutionally defective because of the additional unnecessary burden and delay involved. Barnes v. Mississippi, No. J.86-0458(W) slip op. at 7 (S.D.Miss. July 2, 1986); Glick v. McKay, 616 F.Supp. 322 (D.Nev.1985); Akron Center for Reproductive Health v. Rosen, 633 F.Supp. 1123, 1135 (N.D. Ohio 1986).
While the court agrees that this omission is constitutionally problematic, the court feels that this defect could be cured by amending the Uniform Juvenile Court Rules to specify that official written documentation from the juvenile court demonstrating that the court had failed to act within the specified time period must be immediately provided to the minor or the minor's counsel.

2. Screening of Petition by "Intake Officer"
Rule 4.1, Uniform Juvenile Court Rules requires in all proceedings over which the juvenile court has jurisdiction an "intake officer" be appointed to make a preliminary determination as to whether a petition shall be filed. The rule provides that the intake officer may endorse a petition if the allegations in the petition appear to be legally sufficient and "it further appears that judicial action is in the best interest of the public and the child within guidelines established by the court ..." Rule 4.1, Uniform Juvenile Court Rules.
Rule 4.2 makes it clear that before a petition is filed, the intake officer shall screen the complaint which, among other options, may result in a decision to recommend dismissal. Rule 4.2 lists a set of factors to be considered in this screening process. Rule 4.2, Uniform Juvenile Court Rules.
At the hearing the court asked counsel for defendant what purpose or role this intake officer played in the bypass proceeding. Defendant argues that the portion of Rule 4.1 requiring referral to an intake officer applies only to cases involving delinquency, deprivation or unruliness and does not apply to this case. This reading; however, is contrary to the plain meaning of the rule which by its terms applies to "all proceedings" and makes no distinction as to which cases require an intake officer.[5] When reading the Uniform Juvenile Court Rules as a whole, the court is left with the same conclusion; Rule 4.1 requires referral to an intake officer who shall make a preliminary determination as to whether the waiver petition shall be filed. Nothing in the juvenile court rules governing parental notification petitions specifically contravenes *1425 this requirement.[6] This provision is constitutionally impermissible.[7] The Supreme Court in Bellotti v. Baird held that "the constitutional right to seek an abortion may not be unduly burdened by state imposed conditions upon initial access to court." 443 U.S. at 648, 99 S.Ct. at 3051.
The defendant has made no showing as to the purpose or role such an officer would serve. The language of the rule requires that the intake officer make a determination whether the judicial action is in the best interest of the minor and the public irrespective of whether the minor is mature or not. This provision violates the Supreme Court's holding in Bellotti v. Baird, 443 U.S. at 643, 99 S.Ct. at 3048 that a mature minor is entitled to an abortion without having to show that it would be in her best interests. Further, the possibility of denying the minor the right to file a petition because it is not in the public's best interest conflicts with the Supreme Court's holding that she be entitled to an abortion, even where she is not mature, where it is in her best interests. Bellotti, 443 U.S. at 644, 99 S.Ct. at 3048.[8]
The court questions, even where such an intake officer was authorized to apply the correct constitutional standards, whether such an officer meets the requirement that a "neutral tribunal" make such a decision. Bellotti, 443 U.S. at 643, 99 S.Ct. at 3048. The court does not believe that where a juvenile court judge must expeditiously make the waiver determination, the requirement of a preliminary step such as this is narrowly-tailored to accomplish the state's interests. Certainly the defendant has made no such showing.
Moreover, even if the rules could be read to deny the intake officer the authority to block the filing of the petition, the state has not clarified whether the rules contemplate that this person would make a merits recommendation to the juvenile court judge, or what effect such a recommendation might have where the judge is required to reach that very question in a short period of time. The court notes also that the inclusion of an unnecessary participant in the bypass procedure discloses her identity to yet another person and tends to erode her anonymity.

3. "Guardian Ad Litem"
Form JUV-88-18, the current waiver petition form, makes provision for a *1426 guardian ad litem to be appointed pursuant to Rule 23.2, Uniform Juvenile Court Rules.[9] The amended Act makes no provision for a guardian ad litem to be appointed. At the hearing, the court questioned defendant's counsel about the role and purpose of the guardian ad litem in the proceeding. Rule 23.2 states only that the guardian be appointed to protect the interest of the minor. The state in its post-hearing brief asserts that the purpose of the guardian is "to insure that a very young or naive minor gets the full protection of the law." Defendant's Post-Hearing Brief at 7. The statute and rules do not contemplate that the minor's counsel serve as guardian and this purpose is served by counsel for the minor. The court has merely questioned the necessity for appointing such a person; however, the defendant has been unable to demonstrate any such necessity.
The court by its ruling in no way wants to preclude provision for a properly appointed guardian ad litem whose role promotes an appropriate state interest while not unduly burdening the minor's rights. The court acknowledges that the guardian could be helpful or even necessary to assure that the minor's welfare is protected. The state; however, has not articulated such a cognizable interest, nor shown that the current provision is in any way narrowly tailored to such an interest. When conducting a "strict scrutiny" analysis, the court is constrained from fashioning an explanation of the possible value of the guardian in lieu of such an explanation by the state.
Without specification of his or her purpose or role, the guardian could take a position contrary to the allegations of the minor that she is not mature and/or notification of her parents would not be in her best interests. Given that the hearing must take place within a very short time period, it is hard to imagine how such a guardian could sufficiently acquaint himself or herself with the minor in order to formulate any opinion on the merits question and assist the court in its determination of that very question. In the absence of any showing by the defendant of the necessity of such a guardian, the court feels that this provision is not narrowly tailored to the state's interest. The court notes that without any justification for the guardian to be appointed, disclosure of the minor's identity to that person further erodes her anonymity.

4. "Sealing" the Record
The amended Act, in order to comply with this court's previous preliminary injunction order, requires "sealing" of the record, but does not specify at what stage in the waiver proceeding the records are to be sealed. § 15-11-114(d). The insertion of this provision immediately after the section providing for a hearing implies that the records are to be sealed only after the hearing. If this is so, then the statute fails to comply with this court's previous order. The court believes that a reasonable interpretation of the language of the amended Act is that the records must be sealed during the pendency of the proceeding and never disclosed.[10] Such a reading allows the statute to pass constitutional muster on this issue. However, nowhere do the Uniform Juvenile Court Rules require the record of the juvenile court proceedings be sealed at any time. As the court has previously ruled, without such a provision for sealing, the rules are not in compliance with the constitutional standards for anonymity. Planned Parenthood, 670 F.Supp. at 992; see also Planned Parenthood of Southeastern Pennsylvania v. Casey, 686 F.Supp. 1089, 1128-29 (E.D.Pa. 1988).

5. Requirement of Name, Signature and Date of Birth
Form JUV-88-18, the current waiver petition form, requires the minor's *1427 name, signature and date of birth be written on the form. At the hearing, the court questioned counsel for the defendant as to what necessity existed for this information to be provided on this petition form. Defendant has responded only that the minor's identity must at sometime be known by the juvenile court. While defendant is doubtlessly correct on this point, there has been no showing as to why this particular method is necessary, or more pertinently, whether it is narrowly tailored to serve the state's objective while preserving the anonymity of the minor. As this court has previously noted, systems are in place in other states which protect anonymity. For example, in Massachusetts, a minor proceeds pseudonymously while an affidavit containing her name is placed in a separate confidential file obviating the need even for juvenile court personnel to see it. Planned Parenthood, 670 F.Supp. at 992.
Form JUV-88-18 also requires a statement from a licensed medical doctor confirming the pregnancy and current trimester of gestation. Neither the amended Act or the Rules make any provision for deleting or otherwise redacting any identifying information contained on that statement. Absent any provision in the rules providing for sealing the juvenile court record, this court cannot constitutionally sanction the use of Form JUV-88-18.
Additionally, Rule 6.5, Uniform Juvenile Court Rules requires that all petitions, including waiver petitions, contain the petitioner's name, age, address and other identifying information about the petitioner. The defendant has made no showing that this information is necessary or that this method is narrowly tailored to serve the state's interest while preserving the minor's anonymity. For the reasons stated above, the court feels the judicial bypass system as currently contemplated under the amended Act, rules and forms does not guarantee a minor petitioner constitutionally adequate anonymity.[11]

B. Verification Procedures

1. "Regular Mail" Notice
As noted above, a verification requirement enacted to promote the state's significant interest in ensuring the notification of the minor's parent and in promoting consultation before her decision to have an abortion must be narrowly tailored to promote these interests so as not to unduly burden the minor's right. Planned Parenthood, 670 F.Supp. at 985.
The amended Act provides three methods of verifying notification. First, the minor may furnish the provider with a statement, signed by a parent or an appropriate parental substitute, stating that person has been notified that an abortion is to be performed on the minor. § 15-11-112(a)(1)(A). Second, the physician or agent may give at least 24 hours actual notice, "in person or by telephone," to the parent or parent substitute. § 15-11-112(a)(1)(B).[12] Third, the physician may give written notice of the pending abortion and the address of the place where the abortion is to be performed, "sent by regular mail," and addressed to the parent or appropriate parent substitute. § 15-11-(a)(1)(C).[13] Unless proof of delivery is otherwise sooner established, such notice "shall be deemed delivered 48 hours after mailing." § 15-11-112(a)(1)(C).
As to this third requirement that written notice be sent by "regular mail", plaintiffs contend that the amended Act allows only one method of written notification and precludes *1428 the use of more expeditious delivery of written notice such as Express Mail, Federal Express, telegrams or private messenger services. Thus, plaintiffs argue that the statute unnecessarily obstructs and delays the minor's ability to receive an abortion by precluding faster methods of written notice.
Defendant at the hearing contended that this court could read the "regular mail" provision as including these alternative forms of written notice. The court disagrees. The plain meaning of "regular mail" certainly does not contemplate any of these delivery methods.[14]
The court inquired at the hearing as to whether these more expeditious methods of delivery of written notice might constitute "actual notice" under § 15-11-112(a)(1)(B) of the amended Act because several of these methods require the receiving party to sign for the delivery. Both parties correctly point out that the amended Act permits actual notice only "in person or by telephone." § 15-11-112(a)(1)(B). Defendant offered that for both (a)(1)(B) and (a)(1)(C) if the parent confirms that he or she has previously been informed, the abortion may proceed immediately. Defendant adds that under (a)(1)(C), the 48-hour constructive receipt period is not required if delivery is otherwise sooner established and that these alternative methods of delivery could provide such earlier confirmation of delivery of the notice. This response does not address plaintiffs' contention that these particular methods are unnecessarily precluded.
The court notes that these alternative methods of notice are not specifically precluded; however, the amended Act does not recognize them as effective means of complying with its notice provisions. The amended Act provides only that "unless proof of delivery is otherwise sooner established" the constructive delivery period is 48 hours. § 15-11-112(a)(1)(C). "[D]elivery" in this section refers to written notice, however the statute provides for written notice delivered only by "regular mail." Neither § 15-11-112(a)(1)(C), nor any other provision of the amended Act recognize the effectiveness of the alternative methods urged by plaintiffs.
Under the current verification procedures contemplated by the amended Act, unless a parent calls the abortion provider and confirms that he or she has been given notice, for example by Federal Express, providers will have no other choice than to utilize the telephone or "in person" notice provisions of (a)(1)(B) to confirm that the more expeditious form of written notice was actually received by the proper party. Because the provision which specifies that notice will be deemed delivered after 48 hours by its terms applies only to notice by "regular mail", no "deeming" provision exists for the more expeditious means of written notice urged by plaintiffs.
In sum, the court finds that, by the plain meaning of its terms, the amended Act does not permit the use of the alternative methods of delivery of written notice suggested by plaintiffs. No provisions of the statute ameliorate this omission. Defendant has provided no justification why regular mail is the only acceptable method of providing a parent written notice. By not recognizing these more expeditious methods without adequate justification for their omission, the amended Act creates impermissible delay in a minor's exercise of her right to terminate her pregnancy.
Even though plaintiffs attack the operation of the current mail notice provision, plaintiffs stress that a written alternative to telephone notice is necessary to ensure expeditious verification. Plaintiffs presented testimony, and the court is aware, that many times parents may not be reachable by telephone. Moreover, plaintiffs presented testimony that some portion of minor's parents do not have telephone service available to them. The court feels that to avoid constitutional infirmity, the statute must provide an expeditious written notice alternative to telephone notice, not unduly burdensome to the exercise of the minor's rights.

*1429 2. 24 Hour Waiting Period
Plaintiffs challenge the amended Act's provisions requiring a 24-hour waiting period from the time telephone or mail notice is given until the provider may legally perform the abortion. The amended Act requires a 24-hour waiting period be observed after actual notice by the provider in person or by telephone, § 15-11-112(a)(1)(B), and after delivery, or after 48-hour "deemed" delivery, of mail notice. § 15-11-112(a)(1)(C). The 24-hour waiting period does not apply if (1) a parent or appropriate substitute submits a signed statement that he or she has been notified, § 15-11-112(a)(1)(A), (2) the parent or appropriate substitute indicates that he or she has previously been informed that the minor was seeking an abortion, § 15-11-112(a)(1)(B) and (a)(1)(C), or (3) the notified parent "clearly expresses that he or she does not wish to consult with the minor." § 15-11-112(a)(1)(B) and (a)(1)(C).[15]
As the court noted in its previous preliminary injunction ruling, the state has a significant interest in promoting parental consultation with a minor before her decision to have an abortion. Planned Parenthood, 670 F.Supp. at 983. The question for the court is whether the procedures for verifying that this consultation process has in fact taken place are narrowly tailored to promote this interest so as not to unduly burden the minor's rights.
In Zbaraz v. Hartigan, 763 F.2d 1532, 1536-38 (7th Cir.1985), the Seventh Circuit struck down as unconstitutional a 24-hour waiting provision requiring that the waiting period be observed in all cases. The court concluded that the waiting period was defective because (1) it imposes a far greater burden on a minor's rights than a mere notification requirement, and (2) it does not significantly further the state's interest in promoting parental consultation when combined with a notification requirement which itself promotes that interest. Id. at 1538. That ruling was affirmed without opinion by an equally divided Supreme Court. See Hartigan v. Zbaraz, 484 U.S. ___, 108 S.Ct. 479, 98 L.Ed.2d 478 (1987).[16] Courts have split on the issue. See Zbaraz, 763 F.2d at 1536-37 (listing citations of courts striking down waiting period provisions in both notice and consent laws).
This court believes that the 24-hour waiting period in the amended Act calls for a closer analysis. First, the court notes that the 24-hour provision applies only under certain carefully specified circumstances. As noted above, the amended Act provides exceptions where the parent provides a signed statement verifying notification, where the parent indicates that he or she has previously been informed, or where the parent indicates that he or she does not wish to consult with the minor.
Second, with regard to the "actual notice" to be accomplished by the provider in person or by telephone, the court believes that the provision promotes the significant state interest in ensuring parental consultation and is narrowly tailored so that the burden of delay is minimized. There must be some opportunity after notification for consultation to take place. The court feels that if the abortion could proceed immediately or shortly after the notice by the provider to the parent, the statutory scheme could preclude consultation, not promote it.[17]
Other courts have noted that a notification requirement would be an empty formalism without practical effect if the abortion *1430 could proceed before the parental consultation could take place. See Akron Center for Reproductive Health v. Rosen, 633 F.Supp. 1123, 1039 (N.D. Ohio 1986), appeal dismissed 805 F.2d 1033, 1036 (6th Cir.1986) (upholding a similar provision), cited in Hodgson v. State of Minnesota, 648 F.Supp. 756, 779 (D.Minn.1986) (striking down a 48-hour waiting period as causing undue burden and delay in practice), aff'd 827 F.2d 1191 (8th Cir.), vacated and withdrawn; reh'g denied 835 F.2d 1545 (8th Cir.), reinstated; reh'g en banc granted; vacated 835 F.2d 1546 (8th Cir.1987).
The 24-hour waiting period under the amended Act must also be observed where notice is accomplished by "regular mail". § 15-11-112(a)(1)(C). Under this same provision, unless sooner delivery is otherwise established, the provider must observe a 48-hour period for "constructive receipt" of the mail notice. Id. Because of the 48-hour period for constructive receipt and the 24-hour waiting period to assure consultation, the actual delay imposed by statute would equal 72 hours. Taken together, these requirements contemplate two or three trips by the minor to the provider and three days' delay. The court finds this 72-hour delay contemplated by the statute unduly burdens the minor's exercise of her rights. This is especially true where more expeditious forms of written notice are available, but are not recognized by the statute. See discussion supra at B.1.[18]
In Hodgson v. Minnesota, the court struck down a statutory scheme that required 24-hour constructive receipt of mail notice and a 48-hour waiting period for parental consultation. 648 F.Supp. at 779. Although the time periods required for the waiting period and for constructive receipt are reversed under the amended Act, the resulting delay and burden is the same.

CONCLUSION
As a preliminary matter, the court GRANTS defendant's motion to consolidate.
As to Plaintiffs' Motion for Preliminary Injunction, the court has identified the following defects with the Georgia Parental Notification Act, as amended, and the Uniform Juvenile Court Rules:
With reference to the amended Act, the court finds that the failure of the statute to recognize more expeditious forms of written notice under § 15-11-112(a)(1)(C) is the only constitutional defect in the statutory scheme not remediable by amendment to the Uniform Juvenile Court Rules. See also text accompanying note 18.
Defects with the Uniform Juvenile Court Rules include: (a) The failure of the Rules to provide that official written documentation from the juvenile court be given to the minor or her counsel confirming that the juvenile court has failed to hear the waiver petition or rule within the statutorily mandated time period; (b) The "screening" of the waiver petition by an "intake officer"; (c) The appointment of a guardian ad litem without sufficiently articulating the role and purpose of such a person in the judicial bypass procedure; and (d) The failure to provide constitutionally adequate anonymity in the judicial bypass procedure.
For these reasons, the court GRANTS plaintiffs' motion for preliminary injunction and enjoins the implementation of the Georgia Parental Notification Act, as amended.[19]
NOTES
[1] The court by order dated June 27, 1988 has already incorporated the entire record of Planned Parenthood I into Planned Parenthood II.
[2] The amended Act indicates that where the person notified indicates that he or she has previously been informed or if that person expresses that he or she does not wish to consult with the minor, the abortion may proceed immediately. § 15-11-112(a)(1)(B).
[3] The amended Act provides that "[u]nless proof of delivery is otherwise sooner established, such notice shall be deemed delivered 48 hours after mailing." The abortion may be performed 24 hours after the delivery of the notice; provided however that if the person so notified indicates that he or she has been previously informed that the minor was seeking an abortion, or if the person expresses that he or she does not wish to consult with the minor, then the abortion may proceed immediately. § 15-11-112(a)(1)(C).
[4] As this case is currently before the court on plaintiffs' motion for a preliminary injunction, the four factors the court must consider in deciding whether such relief is proper are: (1) Is there a substantial likelihood that plaintiffs will prevail on the merits? (2) Will plaintiffs suffer irreparable injury if injunctive relief is not granted? (3) Does the threatened injury to plaintiffs outweigh the threatened harm the injunction will cause defendant? and (4) Will the granting of a preliminary injunction disserve the public interest? Callaway v. Block, 763 F.2d 1283, 1287 (11th Cir.1985). Defendant at the hearing and in his briefs in opposition to plaintiffs' motion contests only prong one of the test; the likelihood of success on the merits.
[5] The court in its previous preliminary injunction order stated that where statutory language is subject to two reasonable interpretations, one constitutional and one not, a court should adopt the interpretation that avoids the constitutional difficulty. However, where the plain meaning of the language is clear and unambiguous, that language controls the interpretation of the statute. See Planned Parenthood, 670 F.Supp. at 985.
[6] Defendant contends that other portions of the Rules lead to an opposite conclusion. The court disagrees and finds that the provisions cited by defendant do not suffice even to create an ambiguity in the interpretation of Rule 4.1. Rule 2.5 does not contravene the intake officer's authority under Rule 4.1. Likewise, Rules 1.1 and 23.3 while generally calling for harmonization and subrogation of the other Rules to those involving parental notification, do not speak to exempting waiver petitions from the intake officer requirement. See note 7 supra. The procedures applicable to the waiver proceeding are not clearly spelled out under Section 23 of the Uniform Juvenile Court Rules.
[7] Form JUV-87-18, the original waiver petition form promulgated for use with the original Act, explicitly required approval of the petition by a "court designee" as "filed in the best interest of the child and the public." This line was deleted from Form JUV-88-18, the new waiver petition form. Defendant argues that the fact that the offending requirement was deleted demonstrates that the intake officer requirement under Rule 4.1 does not apply to waiver proceedings under the amended Act. The court finds this argument meritless. Rule 4.1 clearly requires that such an officer make this determination and the court understands that the juvenile courts are bound by the rules promulgated by the Georgia Supreme Court. The Rule has not been explicitly amended to specifically exempt JUV-88-18 or the waiver proceeding generally.

The existence of the "court designee" requirement on the previous form is additional support for the court's finding above that Rule 4.1 requires that an intake officer make a preliminary determination regarding the filing of the minor's waiver petition. Its existence also undermines the defendant's position (1) that Rule 23.3 eradicates the intake officer requirement and (2) that because Rule 23.4 requires the hearing to be conducted by a judge in all instances that rule removes the intake officer's authority to block access to the juvenile court judge, because under the 1987 scheme which required preliminary determination by the court designee those rules were obviously not thought to do so.
[8] Rule 4.1, Uniform Juvenile Court Rules states that the determination by the intake officer as to whether the judicial action is in the best interest of the child and the public will be made "within guidelines established by the court." The defendant has produced no evidence of the content of any such guidelines.
[9] Rule 23.2 states that "[w]henever a minor petitions the court for relief under Article 3, Chapter 11, title 15 of the Official Code of Georgia, the court shall appoint a guardian ad litem to protect the interests of the minor."
[10] See note 5 supra.
[11] The court notes that Rule 23.9, Uniform Juvenile Court Rules is extremely explicit regarding anonymity, even though it still fails to provide that the record on appeal be sealed. The court is puzzled as to why Rules 23.6 and 23.8, dealing with the juvenile court proceeding itself, are less protective of the minor's right to anonymity.
[12] This requirement is obviated if the person so notified indicates that they have previously been informed of the minor's intention or if the person so notified expresses that he or she does not wish to consult with the minor. § 15-11-112(a)(1)(B).
[13] This requirement likewise is obviated if the person so notified indicates that they have previously been informed of the minor's intention or if the person so notified expresses that he or she does not wish to consult with the minor. § 15-11-112(a)(1)(C).
[14] See note 5 supra.
[15] The amended Act does not "apply when, in the best clinical judgment of the attending physician on the facts of the case before him (sic), a medical emergency exists that so complicates the condition of the minor as to require an immediate abortion." § 15-11-116.
[16] Such an summary affirmance has no controlling precedental authority over this court. See Marks v. United States, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
[17] For example, if a provider utilized the telephone notice option and notified the parent that the daughter would be having the abortion in 3 hours, a parent on the job or some distance away from the provider's location would be physically precluded from consulting with the minor where the minor refused to speak to the parent on the telephone.
[18] By allowing the use of such forms of written notice as Express Mail, Federal Express, telegrams and messengers, many of which guarantee delivery in 24 hours or less, this defect could be ameliorated. The court notes the import; however, of providing a 24-hour "deeming" provision acknowledging constructive receipt of such notice within 24 hours where the entity providing delivery of the notice does not, or is unable to, show by signature of the parent that delivery was made within 24 hours.
[19] The court finds that plaintiffs have met the four requirements for granting a preliminary injunction. Callaway, 763 F.2d at 1287.

Additionally, the court denies Mitchell Williams' motion to intervene and to dismiss. Williams has not met the requirements of Rule 24(a)(2), Fed.R.Civ.P., see Panola Land Buying Association v. Clark, 844 F.2d 1506 (11th Cir.1988) or Rule 24(b), pertaining to intervention. His motion to dismiss is therefore not properly before the court.